IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MICHAEL LYNN JUSTICE #00544612 | § | |
| VS. | § | CIVIL ACTION NO. 6:23cv016 |
| MARGARET M. PRICE, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Michael Lynn Justice, an inmate of the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this complaint under 42 U.S.C. § 1983 complaining of alleged violations of his constitutional rights in prison. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. The operative complaint is Plaintiff's Amended Complaint, filed February 10, 2023. (Dkt. #9.)

Following the Court's sua sponte dismissal of all other Defendants (*see* Dkt. #45) Defendants Spencer Lucas, Zulema Calderon, and Tornam Adjabeng have moved to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted. (Dkt. #48.) Plaintiff has not responded to that motion. For reasons explained below, the undersigned recommends that the motion be granted in part and denied in part.

**I. Plaintiff's Pleadings**

An amended complaint entirely supersedes and takes the place of an original complaint. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986). For the purposes of the pending motion, the Court summarizes only those portions of Plaintiff's amended complaint pertaining to the moving Defendants.

Plaintiff alleges that he had a verbal altercation with Defendant Lucas on October 15, 2021, in 7 building, general population. (Dkt. #9 at 9.) Specifically, Lucas told Plaintiff, who was already in handcuffs, that he did not care about the presence of a camera and would still "kick [his] ass" despite the cuffs. (*Id.*) Plaintiff was then moved to 12 building wearing nothing but boxer shorts, where he was denied a mattress and bedding deprived of food, water, and his high blood pressure medicine until October 29 on orders from Lucas: "Major Spencer R. Lucas II stated not to feed me." (*Id.* at 6, 7, 9.) He alleges that Lieutenant Zulema Calderon was then involved in strip-searching Plaintiff every hour and was one of the officers who refused to feed him based on Lucas's order. (*Id.* at 9.) Plaintiff says this deprivation "cause[d] harm to the human body." (*Id.* at 9.)

Also on October 15, 2021, Plaintiff alleges that Defendant Adjabeng (to whom Plaintiff refers as "Adialicng Tornam") "attack[ed] [him] with chemical agents" and pushed him down a flight of stairs." (Dkt. #9 at 10.) He asserts that Adjabeng's actions were unprovoked and endangered his life. (*Id.*)

Plaintiff also vaguely alleges that Defendant Lucas denied him "legal materials" and that someone retaliated against him. (*Id.* at 3, 4, 9.) He seeks monetary damages of $5 million. (Dkt. #9 at 4.)

**II. Defendants' Motions to Dismiss**

Defendants move to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. (Dkt. #48.) First, they assert that any claims against Defendants in their official capacities should be dismissed for lack of jurisdiction under Rule 12(b)(1) because such claims are broadly barred by sovereign and Eleventh Amendment immunity. (*Id.* at 3–4.)

2

Defendants also argue under Rule 12(b)(6) that Plaintiff fails to state a claim for which relief can be granted. Specifically, they assert that Plaintiff has failed to allege any facts demonstrating the personal involvement of Defendant Lucas and that he fails to state a claim for food deprivation under the Eighth Amendment. (*Id.* at 4–6.) They also assert that Plaintiff does not state an access-to-courts violation under the First Amendment. (*Id.* at 6–7.) Defendants assert that Plaintiff does not identify Calderon as a Defendant and does not state a claim against Calderon. (*Id.* at 7–9.)

Defendants also argue that Plaintiff's claims are barred by the physical injury requirement of the Prison Litigation Reform Act. (*Id.* at 9–10.) They assert that "[e]ven if Adjabeng sprayed him with a chemical agent and pushed him down the stairs, and even if Lucas and/or Calderon deprived him of food, it is entirely possible that Plaintiff did not suffer non-de minimis injuries as a result." (*Id.* at 10.)

Finally, Defendants assert that Lucas and Calderon are entitled to qualified immunity from Plaintiff's claims against them. (*Id.* at 7–9.) With respect to Lucas, they say the lack of violation alone entitles him to qualified immunity and add simply and without citation that "even assuming arguendo that some right was violated, Lucas is still entitled to qualified immunity because his actions were reasonable in light of clearly-established law." (*Id.* at 7.) Regarding Calderon, they assert that she is entitled to qualified immunity because, in addition to not being expressly named as a Defendant, "[t]he Court cannot infer from this alleged statement [that Plaintiff was not allowed to have anything in his cell or open his tray slot] alone that Calderon was knew [sic] the extent or duration of Plaintiff's alleged food and water deprivation, much less that she acted with deliberate indifference towards that deprivation." (*Id.* at 8.)

3

**III. Legal Standards**

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). The Rules require the court to dismiss a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Claims barred by the invocation of sovereign immunity "can be dismissed only under Rule 12(b)(1)." *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).

In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts or evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). When the defendant alleges a facial attack under Rule 12(b)(1), "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, Federal Rule of Civil Procedure 12(b)(6) permits dismissal if a plaintiff "fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414, 2012 WL 5419531 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*. Pro se plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

**IV. Discussion and Analysis**

    A. Official Capacity Claims

Ordinarily, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. Here, the Defendants have moved that the claims against them in their official capacities be dismissed for lack of jurisdiction.

The Eleventh Amendment bars a suit in federal court against a state unless the sovereign has unequivocally expressed a waiver of its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).  Furthermore, because state officials assume the identity of the government that employs them, state officials sued in their official capacity are not liable for damages under section 1983. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, any claim for damages against any Defendant in this case in his or her official capacity must be dismissed.

The *Ex Parte Young* doctrine "represents an equitable exception to Eleventh Amendment sovereign immunity," through which plaintiffs may seek injunctive relief to enforce federal law against a state official in his official capacity. *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (discussing *Ex parte Young*, 209 U.S. 123 (1908)). But in this case, Plaintiff does not seek any injunctive relief, and any such demand would be invalid because he does not allege any ongoing violation:

> "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). "To obtain [declaratory] relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Id.*

*Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (dismissing claim for declaratory judgment

and allowing excessive-force claim to proceed). Accordingly, Plaintiff's official-capacity claims against all Defendants for any violation of his constitutional rights must be dismissed.

B. Individual Capacity Claims

1. First Amendment

Plaintiff alleges that he was denied "legal materials," which the Court understands to claim a violation of his right to access the courts. But an inmate claiming that some obstacle to his litigation violated his First Amendment right to access the courts "must go one step further and demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To state a claim under this standard, the inmate must be able to point to some actual injury to his litigation:

> He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* The nature of the underlying litigation is also material to this analysis. "[T]he inmate must show that a nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or that the deficiency is currently preventing his presentation of such a claim" and "[t]he underlying claim must be described well enough to apply the frivolity test and to show that its 'arguable nature . . . is more than hope.'" *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

The amended complaint in this case does not satisfy that standard. Plaintiff does not provide any information at all about the claims he might have filed with sufficient "legal materials." His vague allegation of being denied materials, without any identifiable injury to

otherwise viable litigation, is not sufficient to establish a constitutional violation.

Plaintiff also vaguely alleges retaliation. Officials may not retaliate against an inmate for exercising his First Amendment rights. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). Inmates can state a claim for retaliation in violation of the First Amendment by alleging "that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Causation in a retaliation case requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (internal citations omitted). "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Id*. (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal quotation marks omitted).

Trial courts are to carefully scrutinize claims of retaliation "[t]o assure that prisoners do not inappropriately insulate themselves . . . by drawing the shield of retaliation around them." *Woods*, 60 F.3d at 1166. "Conclusory allegations of retaliation without a specific factual basis will not suffice." *Graves v. Mbugua*, No. 9:16-CV-170, 2020 WL 6947900, at *5 (E.D. Tex. Aug. 13, 2020), *report and recommendation adopted*, No. 9:16-CV-170, 2020 WL 6940783 (E.D. Tex. Nov. 24, 2020) (citing *Woods*, 60 F.3d at 1166).

Plaintiff's vague allegation of retaliation does not satisfy this standard. He does not establish that any of the actions alleged were substantially motivated by any constitutionally

protected conduct by Plaintiff. He acknowledges that he "did have a conversation" with Defendant Lucas before he was moved to 12 Building, but he does not provide any details about that conversation or otherwise establish that it constituted protected activity. (Dkt. #9 at 9.) "Prison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment." *Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 864 (5th Cir. 2004). Accordingly, "[a] face-to-face, verbal confrontation with prison officials is not protected speech sufficient to support a First Amendment claim because such an interaction presents "a danger of a disturbance and a disruption to institutional order and discipline." *Scott v. Turner*, No. CV 18-00626-BAJ-EWD, 2021 WL 1030238, at *4 (M.D. La. Mar. 17, 2021) (quoting *Nunez v. Ramirez*, No. 09-413, 2010 WL 1222058, at *5–6 (S.D. Cal. Mar. 24, 2010)). Thus, even if Plaintiff explicitly alleged that his "conversation" with Lucas was the basis for the alleged retaliation, he would fail to state a claim.

2. Eighth Amendment

The Court considers the rest of Plaintiff's constitutional claims under the Eighth Amendment and its prohibition against cruel and unusual punishment, which prohibits the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Eighth Amendment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing, and medical care. *Herman*, 238 F.3d at 664; *see also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones").

An Eighth Amendment violation occurs in prison only when two requirements are met. First, there is the objective requirement that the aggrieving condition "must be so serious as to

'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina Cnty., Tex.*, 31 F.3d 331, 334 (5th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. at 304). Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In applying this standard, the determinative question is whether a defendant prison official subjectively knew that an inmate faced a substantial risk of serious harm yet disregarded that risk by failing to take reasonable steps to abate it. *Id.* To be deliberately indifferent, a prison official must have personally been aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and the official must also be found to have drawn the inference. *Id*. Conclusory allegations are not sufficient to satisfy this standard; a plaintiff must allege facts to support what are otherwise broad and conclusory allegations of wrongdoing. *See Rougley v. GEO Group*, 2011 WL 7796488, at *3 (W.D. La. Nov. 7, 2011).

The Fifth Circuit has discussed the "high standard" involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment,

absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Even defendants "who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. In sum, in order to show deliberate indifference, the prisoner must show (1) objective exposure to a substantial risk of serious harm, (2) the defendants had subjective knowledge of this substantial risk, (3) the defendants denied or delayed the prisoner's medical treatment despite their knowledge of this substantial risk, and (4) this denial of or delay in treatment resulted in substantial harm. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

Moreover, to be personally liable under Section 1983, an individual defendant "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695–96 (5th Cir. 2017). Accordingly, supervisors are not liable under a *respondeat superior* theory for the conduct of their subordinates under Section 1983, but are only liable for their own unconstitutional actions and omissions. *Iqbal*, 556 U.S. at 676 (government officials not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*); *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (rejecting claim that defendant was liable for failure to supervise other officers because "[u]nder § 1983 . . . a government official can be held liable only for his own misconduct"). "Liability under § 1983 for a supervisor may exist based either on 'personal involvement in the constitutional deprivation,' or 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Martinez v. Maverick Cty.*, 507 F. App'x 446, 448 (5th Cir. 2013) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 n.2 (5th Cir. 1987)).

Plaintiff's allegation that he was denied food, water, and prescribed medication for two full weeks is sufficient to satisfy this standard. Defendants concede that the deprivation "likely satisfies the Eighth Amendment's objective component."[1] (Dkt. #48 at 6.) They simply challenge Lucas's personal involvement in the deprivation, arguing that "Plaintiff fails to allege any facts demonstrating Lucas's deliberate indifference to that deprivation," which took place after Plaintiff was moved to another building following his "conversation" with Lucas. (*Id.*) But Plaintiff expressly alleges that the deprivations to which he was subjected were personally ordered by Major Lucas, as he was informed by Calderon and other officers who were carrying out that order in 12 Building. (Dkt. #9 at 9.) If true, that order was Lucas's own personal action, taken with obvious knowledge and disregard for the harm caused by such severe deprivations. Whether Defendants can disprove that allegation is a question of fact, which is not amenable to resolution under Rule 12(b)(6).

Defendants next argue that the Court cannot infer from Calderon's telling Plaintiff that Lucas had ordered staff not to feed him that she personally knew of the extent or duration of his deprivation and was deliberately indifferent to it. (Dkt. #48 at 9.) But unlike Lucas, Calderon was in 12 Building frequently interacting with Plaintiff. He alleges that she was personally involved in strip searches of him every hour of every day during the period in question. (Dkt. #9 at 9.) And, as alleged, she knew that Lucas had ordered that he be given no food, and she complied with that order. (*Id.*) Plaintiff thus sufficiently alleges facts that would establish Calderon's knowledge of and deliberate indifference to a substantial risk of serious harm to Plaintiff. [2]

---

[1] Defendants concede this point despite characterizing Plaintiff's allegation to be that he was deprived of food and water for "approximately four days." (Dkt. #48 at 6.) Plaintiff alleges in the amended complaint that the deprivations continued "from October 15, 2021 to October 29, 2021." (Dkt. #9 at 7.)

[2] Moreover, although Defendants wholly ignore this claim, Plaintiff's allegation of Calderon's involvement in repeated and presumably unwarranted strip searches potentially implicates his right to privacy under the

Defendants also rely, however, on Calderon's absence from Plaintiff's formal list of defendants in his *pro se* amended complaint. (Dkt. #48 at 2, 7–8.) Plaintiff named Calderon as a Defendant in his original complaint (Dkt. #1 at 1, 3), and he continued to allege facts about her treatment of him in the body of his amended complaint. Under some circumstances, "providing specific allegations" against an individual not named in the caption as a defendant can suffice to identify that person as a defendant. *Burley v. Quiroga*, No. 16-CV-10712, 2019 WL 4316499, at *21 (E.D. Mich. June 6, 2019), *report and recommendation adopted*, No. 16-CV-10712, 2019 WL 3334810 (E.D. Mich. July 25, 2019). At this stage of the case, however, the Court is persuaded by several factors that Defendant Calderon has not been properly identified as a Defendant.

First, the fact that Plaintiff knew to name her in his original pleading indicates that he knew how to do so if he wanted her to remain a Defendant to this action. Second, in its Order requiring Plaintiff to amend his complaint, the Court instructed him to "identify the defendants responsible for those [alleged] violations." (Dkt. #5 at 5.) Plaintiff then filed an amended complaint with a numbered list of Defendants that did not include Calderon, despite his discussion of her actions in a portion of the pleading devoted to violations by Defendant Lucas. (Dkt. #9 at 9.) And third, Plaintiff has not responded to this argument by Defendants, neither with a response to the motion arguing that his allegations against Calderon were intended to state a claim against her nor a motion to file a second amended complaint to explicitly name her as a Defendant.

---

Fourth Amendment. *Johnson v. Louisiana Dep't of Pub. Safety & Corr.*, No. 22-30723, 2023 WL 8828642, at *1 (5th Cir. Dec. 21, 2023) ("Johnson's allegations of a strip search conducted without any justification in view of a female guard with the intent to embarrass him states a facially valid Fourth Amendment claim."); *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) ("[T]his Circuit has joined others in recognizing that a convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners.").

Even a *pro se* litigant who benefits from a liberal construction of his submissions must comply with basic rules of litigation, and Plaintiff's actions and inaction with respect to this issue evidence a choice not to assert claims against Calderon. Accordingly, the claims against Calderon should be dismissed without prejudice.

3. Physical Injury Requirement

Federal law precludes prisoners from recovering compensatory damages for constitutional violations that resulted in no physical injury. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]") Defendants argue that Plaintiff's claims are barred because he "fails to provide any basis to infer a physical injury" from the alleged violations. (Dkt. #48 at 10.) They cite unpublished case law to the effect that short-term pain and other consequences of being sprayed with chemical agents alone does not qualify as a physical injury sufficient to satisfy this statute. (*Id.*) They also cite *Blackwell v. Madison Par. Corr. Ctr.*, No. CIV.A. 09-0968, 2010 WL 147987, at *9 (W.D. La. Jan. 13, 2010), which they claim "dismiss[ed] inmate's inadequate nutrition claim because he alleged only *de minimis* physical injuries such as headaches, nausea, and vomiting." (Dkt. #48 at 10.)

*Blackwell* is inapposite and does not stand for the proposition Defendants assert. This is the discussion in that opinion of the prisoner's allegations regarding headaches, nausea, and vomiting:

> The conditions alleged in plaintiff's complaint simply do not rise to the level of Eighth Amendment violations. He complained that on June 2, 2009, he and his fellow inmates began experiencing headaches which led to nausea and vomiting. Their complaints to the guards were not heeded and the facility has still been unable to determine what caused this outbreak. He also complained that the urinals are in close proximity to the dining area and that inmates are confined to the dorms all but

14

> 2 days per month. Such claims, standing alone, simply do not rise to the level of cruel and unusual punishment as defined by the jurisprudence, because, with regard to each of these claims, plaintiff has not alleged that he sustained anything other than *de minimis* harm or injury as a result to his exposure to the complained of conditions. The only complaint of injury was a conclusory claim that he and others, including prison guards, experienced headaches, nausea and vomiting for one day.

*Blackwell*, at *9. Nowhere in the opinion is any connection drawn between the unexplained headaches, nausea, and vomiting and a lack of adequate nutrition. Nor is there any indication that the plaintiff in that case even alleged that he was deprived of food. His only complaint about food was that "cold food is served and inmates must eat in the same area where they urinate and defecate." *Id.* at *3. Defendants' argument on this point is thus misleading and misplaced, and it fails to overcome the common-sense inference that physical harm would result from being deprived of food, water, and prescribed medications for weeks. *See Atomanczyk v. Texas Dep't of Crim. Just.*, No. CV H-17-0719, 2018 WL 3122324, at *5 (S.D. Tex. June 26, 2018) (inferring plausible claim of physical injury from inadequate nutrition and explaining that while prisoner "will have to prove the requisite physical injury to recover at trial, his allegations are sufficient under the federal pleading standard to allow his Amended Complaint to proceed").

Similarly, Plaintiff's allegation that Defendant Adjabeng attacked him with chemical agents to the face and eyes and pushed him down a flight of prison stairs (Dkt. #9 at 10) is sufficient for the Court to plausibly infer at this early stage that he sustained some physical injury as a result. While further factual development may ultimately disprove this inference, construing the facts in favor of Plaintiff for purposes of this motion, they are sufficient to satisfy the physical injury requirement. *See Montgomery v. May*, No. 5:14CV91/RV/EMT, 2016 WL 3619668, at *7 (N.D. Fla. May 16, 2016), *report and recommendation adopted*, No. 5:14CV91/RV/EMT, 2016 WL 3629091 (N.D. Fla. June 29, 2016) (summary judgment warranted based on factual record, even though "[t]he court [previously] concluded that [prisoner's] allegations [of excessive force] were

15

sufficient to raise a reasonable inference that he suffered more than de minimis physical injury, which was all that was required at the Rule 12(b)(6) stage, and that further factual development was needed on the issue").

Finally, even if Defendants eventually disprove any sufficient physical injury, the law "does not bar [a prisoner's] recovery of nominal or punitive damages." *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007). Defendants argue that it should bar Plaintiff's claims in their entirety because "Plaintiff seeks *only* compensatory damages in this case." (Dkt. #48 at 10.) But Plaintiff's requested relief includes "(5) Five Millions [sic] Dollars" and "anything this Court might add." (Dkt. #9 at 4.) Nothing in Plaintiff's amended complaint expressly restricts the relief sought to compensatory damages, and his request as written is broad enough to include both nominal and punitive damages. Defendants' argument regarding Section 1997e(e) fails.

4. Qualified immunity

Alternatively, the Defendants have invoked the defense of qualified immunity. In order to overcome qualified immunity, a plaintiff must allege facts showing that the government official violated a plaintiff's right and that the right was clearly established at the time of the challenged conduct. *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022). The Fifth Circuit has explained as follows:

> Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It protects 'all but the plainly incompetent or those who knowingly violate the law.' *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
>
> Our qualified immunity inquiry is two-pronged. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). First, we ask whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Second, we ask whether the right was 'clearly established.'

16

> *Id.* We can analyze the prongs in either order or resolve the case on a single prong. *Id.*

*Cunningham v. Castloo*, 983 F.3d 185, 190–91 (5th Cir. 2020).

After explaining that a right is "clearly established" only if it is sufficiently clear that every reasonable official would have understood that the defendant's conduct violated that right, and that there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that the conduct is definitively unlawful, the Fifth Circuit went on to state:

> When an official raises qualified immunity on summary judgment, as Sheriff Castloo did here, the plaintiff bears the burden of showing that the defense does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020). To meet that burden, the plaintiff must present evidence, viewed in her [i.e. the plaintiff's] favor, satisfying both qualified immunity prongs by showing that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct. *See id.*

*Cunningham*, 983 F.3d at 191; *see also Byrd v. Harrell*, 48 F.4th 343, 346 (5th Cir. 2022) ("When a government official has asserted qualified immunity, 'the burden shifts to the plaintiff to 'rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.''" (Citation omitted)). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton County, Texas*, 741 F.3d 635, 643–44 (5th Cir. 2014).

In making their qualified immunity argument, Defendants essentially just point to their arguments that Plaintiff has failed to state a claim, which the Court has analyzed and largely rejected above. (Dkt. #48 at 7.) They do not substantively discuss the clearly-established prong of the qualified immunity analysis. (*Id.* ("There is therefore no need to analyze the second prong of qualified immunity, because the lack of violation alone entitles Lucas to qualified immunity.").) Likewise, there is no need for the Court to analyze the second prong when Defendants have failed

to fairly raise it. *See Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 354 n.8 (M.D. La. 2022) (declining to determine whether right at issue was clearly established because defendants' qualified immunity argument was conclusory and did not elaborate upon relevant law). Defendants' skeletal and conclusory qualified immunity argument is without merit.

## V. Conclusion

For the reasons explained above, Defendant Calderon should be dismissed without prejudice due to Plaintiff's failure to identify her as a Defendant. Plaintiff's First Amendment claims and all claims against Defendants in their official capacity should also be dismissed. In all other respects, Defendants' motion (Dkt. #48) is without merit.

## RECOMMENDATION

Accordingly, the undersigned recommends that Defendants' motion to dismiss (Dkt. #48) be **GRANTED** in part to the extent that (1) any claims against Defendant Calderon should be dismissed without prejudice to Plaintiff's ability to file a motion to file a second amended complaint to list her as a Defendant, (2) Plaintiff's First Amendment claims should be dismissed for failure to state a claim, and (3) all claims against Defendants in their official capacities should be dismissed for lack of jurisdiction. In all other respects, the motion should be **DENIED**, and Plaintiff's Eighth Amendment claims against Defendants Lucas and Adjabeng should proceed to further litigation.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and

recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 13th day of May, 2024.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE